**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

IN RE SEALED SEARCH WARRANT

No. 04-M-370
(DRH)

---

IN RE SEALED SEARCH WARRANT

No. 04-M-388
(DRH)

---

**APPEARANCES:**

HON. GLENN T. SUDDABY
United States Attorney for the Northern
   District of New York
445 Broadway, Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207-2924

BRENDAN J. LYONS
Pro Se Proposed Intervenor and Movant
Senior Writer
Times Union/Hearst Corporation
News Plaza Box 15000
Albany, New York 12212

**OF COUNSEL:**

ROBERT P. STORCH, ESQ.
Assistant United States Attorney

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

    The two above-captioned matters involve the applications for and issuance of two search warrants.[1]  The records of both matters were sealed.  Presently pending is the motion of Brendan J. Lyons ("Lyons") pro se, a reporter for the Times Union newspaper and

---

[1] The two search warrants were issued for different premises but as part of the same investigation and are based on the same facts and allegations.  Accordingly, the two matters are hereby consolidated for all purposes of the instant motion.

the Hearst Corporation, to unseal both matters.[2]  The United States opposes Lyons' motion.  For the reasons which follow, Lyons is granted leave to intervene in these matters for purposes of this motion and his motion is granted in part and denied in part.

### I. Background

On August 19, 2004, Special Agent Gregory A. Hautau of the Federal Bureau of Investigation (FBI) applied for a search warrant for the premises of a business located in Albany, New York.  Hautau's seventeen-page affidavit in support of the application alleged that Aaron Date ("Dare") and others had engaged in equity skimming in violation of 18 U.S.C. § 1341 and related federal laws.  The search warrant was issued on the same date.  See Docket No. 04-M-370.  Upon the application of the United States, an order sealing the affidavit and application was also issued.  No return on the search warrant was ever filed, see Fed. R. Crim. P. 41(f)(4), and, therefore, it is unclear whether this search warrant was ever executed.

On August 31, 2004, FBI Special Agent Frederick E. Bragg applied for a search warrant for the premises of Dare's new business located in Albany.  Bragg's eighteen-page affidavit in support of the application was virtually identical to Hautau's except for the addition of certain information obtained since the issuance of the first warrant.  The search warrant was issued on the same date.  See Docket No. 04-M-388.  Upon the application of

---

[2] Lyons' motion was made in a letter dated October 23, 2006.  That letter is deemed a motion to intervene and to unseal.  The United States responded in letters dated November 22 and 27, 2006.  Lyons replied in a letter dated November 29, 2006. In addition, the Court sent letters to the United States dated October 24, and November 27, 2006.  The Clerk is directed to file all six letters in the docket of the first above-captioned matter.

the United States, a sealing order was also issued.  According to the return on the warrant, the warrant was executed on September 1, 2004, resulting in the seizure of various items.

By letter dated October 23, 2006, Lyons requested that matters related to the second search warrant be unsealed, stating that he had obtained information that the second warrant had been issued and executed.  Lyons' letter was forwarded to the United States Attorney's Office with a direction that the United States respond on or before November 22, 2006.  On November 13, 2006, Dare waived indictment and pleaded guilty to three felony counts alleging fraud in violation of 18 U.S.C. § 1343 and related statutes.  United States v. Dare, No. 06-CR-429 (LEK) (N.D.N.Y.).  Sentencing was scheduled for March 6, 2007.  On November 17, 2006, a grand jury returned an indictment against Berne A. Watkins ("Watkins") alleging conspiracy and fraud related to Dare's activities.  United States v. Watkins, No. 06-CR-453 (LEK) (N.D.N.Y.).  Watkins was arraigned on November 20, 2006, pleaded not guilty, and trial is scheduled for January 22, 2007.  The United States now advises that "the government does not anticipate that additional federal charges will be brought against [Dare, Watkins] or others based upon [the] allegations" underlying the issuance of the two search warrants.  Storch Letter dated Nov. 22, 2006 at 1-2.

## II. Discussion

Lyons seeks the unsealing of the documents filed in connection with the two search warrants, asserting both a First Amendment and a common law right of access.  In such circumstances, a court must first "look to the common law, for [a court] need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis."  Gardner v. Newsday, Inc., 895 F.2d 74, 78 (2d Cir. 1990).  As to Lyons' common

3

law claim, the Second Circuit has explained that "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history" and that there exists a presumption of access to such documents. Lugosch v. Pyramid Co., 435 F.3d 110, 119 (2d Cir. 2006).

> The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice. . . . [P]rofessional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of [judicial] functions.

United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) (Amodeo II).

In evaluating a claim to access under the common law, a court must determine (1) whether the documents to which access is sought constitute "judicial documents" giving rise to a presumption of access; (2) if so, the weight accorded the presumption; (3) the existence of any countervailing factors militating against public access; and (4) whether the presumption of access outweighs the countervailing factors. Lugosch, 435 F.3d at 119-26. The central focus of the inquiry is the relationship of the documents to the judicial process, not the particular motivations of those seeking access. See Logusch, 435 F.3d at 123; Amodeo II, 71 F.3d at 1050.

**A. Judicial Documents**

The fact that a document is filed with a court does not, by itself, render that document a "judicial document." Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) (Amodeo I)). "In order to be designated a judicial

4

document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" Id. (citation omitted).  The documents contained in the files of the two search warrants consist of the two warrants, the affidavits of Hautau and Bragg, two sealing orders, a reassignment order, and one search warrant return.  The warrants and orders are documents representing decisions by judges and are, therefore, quintessentially judicial documents.  See U.S. Const. amend. IV (requiring that a search warrant issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); Fed. R. Crim. P. 41(d)(1) (same).  The affidavits of Hautau and Bragg were also mandated by the Fourth Amendment and by a rule of criminal procedure, constitute the bases upon which the judges determined to issue the warrants, are thus both relevant to and useful in the judicial process, and are, therefore, likewise judicial documents.  The return was also mandated to be created and filed by a rule of procedure.  See Fed. R. Crim. P. 41(f)(4).  It also, therefore, became a judicial document upon its filing.

Accordingly, all documents contained in the dockets of the two search warrants are judicial documents.

### B. Weight of the Presumption

The presumption of access which arises from a determination that a document is a judicial document varies in weight depending upon the document's significance in the adjudicative process.  Lugosch, 435 F.3d at 121; Amodeo II, 71 F.3d at 1049.  Thus, "where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches."  Lugosch, 435 F. 3d at 121 (citing Amodeo II, 71 F.3d at 1049).  Where

5

documents "come within a court's purview solely to insure their irrelevance," the weight in this "middle" category declines accordingly. Amodeo II, 71 F.3d at 1049. At the lowest end are "documents [which] play only a negligible role in the performance of [judicial] duties" and carry a presumptive weight which "amounts to little more than a prediction of public access absent a countervailing reason." Id. At 1150.

Here, the documents filed in connection with the two search warrants adjudicated the right of individuals under the Fourth Amendment not to be subjected to government intrusion into areas in which they might reasonably have expected privacy absent a judicial determination of sufficient cause. This right is held among this country's highest values. See generally Stanford v. Texas, 379 U.S. 476, 481-84 (1965) (describing the history of the Fourth Amendment and noting that it represented a "culmination . . . of a struggle against oppression which had endured for centuries."). The judicial determination whether to permit the government to enter and search a person's private property and possessions qualifies, therefore, as a determination of an individual's substantive legal rights and of the government's investigative powers at the heart of the performance of judicial functions. See generally United States v. Leon, 468 U.S. 897, 913-14 (1984) (noting the requirement that the exercise of duties under the Fourth Amendment warrant requirement mandates a "neutral and detached" judge "'and not serve merely as a rubber stamp for the police.'" (citations omitted)); Johnson v. United States, 333 U.S. 10, 14 (1948) (Jackson, J.) ("The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance."). The presumption of access attaching to the documents at issue here, then, falls at the highest end of the continuum described in Amodeo II and Lugosch and carries

6

the maximum possible weight.

### C. Countervailing Factors

Notwithstanding the existence here of the strongest presumption in favor of access, countervailing factors may exist which outweigh that presumption. Lugosch, 435 F.3d at 124. Depending on the weight accorded such countervailing factors, a court may determine to leave documents sealed or to withhold from public access certain portions of the documents. Id. at 124-25. Such factors may include matters protected by legal privileges, id. at 125; concerns for law enforcement efforts or judicial efficiency, Amodeo II, 71 F.3d at 1050; and the privacy interests of third-parties, id. at 1050-51; Gardner, 895 F.2d at 79-80. Here, the United States contends that references in the Hautau and Bragg affidavits to confidential sources of information and to uncharged third-parties merit continued sealing of the documents.

As to confidential sources of information, the two affidavits identify a total of three confidential sources.[3] Those sources are not identified by name but by the designations "CW-1," "CW-2," and "CW-3." As to all three, however, there is brief descriptive information about their employment at the time which could reasonably serve to identify them. As to uncharged third-parties, the affidavits both identify by name two individuals who were involved in business dealings with Dare and Watkins. Both affidavits state the opinions of Hautau and Bragg that there then existed probable cause to believe that both individuals had participated in the commission of crimes with Dare. See U.S. Const. amend. IV

---

[3] The two affidavits identify the same two sources and the Bragg affidavit alone identifies a third source.

(establishing probable cause as the standard for the issuance of an arrest warrant); Fed. R. Crim. P. 4(a) (same).  However, the United States now advises that it does not anticipate that federal charges will be brought against these two individuals based upon the allegations in the affidavits.

The needs to protect both the confidential sources of information and the privacy interests of the uncharged third-parties both constitute recognized countervailing factors which must be weighed against the presumption of access found above.

### D. Applying the Balancing Test

The search warrants, orders, and return in the files of the search warrants do not contain any information which reasonably could reveal the identities of any confidential source of information or either uncharged third-party.  Given the presumption of access applicable here, those documents must be unsealed.

The affidavits of Hautau and Bragg present more difficult questions.  As noted, the weight of the presumption here is great.  That presumption arises from the need to permit meaningful monitoring of judicial actions.  As to the confidential sources of information, the confidentiality of the identities of those sources remains critical to law enforcement's ability to obtain reliable information on criminal activity by assuring sources of that information that their identities will remain undisclosed.  Amodeo II, 71 F.3d at 1051-52.  Here, the need to preserve that confidentiality may easily be accommodated with public access to the affidavits by redacting the limited information in the affidavits which might serve to identify those sources.  Redacting such information would not impair meaningful monitoring of the judicial determinations related to the search warrants and in such circumstances, redaction

and release rather than continued complete sealing has consistently been employed and approved. See Amodeo II, 71 F.3d at 1052 (approving redaction of the identities of confidential sources from a report filed with the court). Thus, while this factor does not require continued sealing of the entire affidavits, it supports redacting the limited information which would serve to identify the confidential sources.

As to the two uncharged individuals identified by name in the affidavits, the Second Circuit has held that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." In re New York Times Co., 825 F.2d 110, 116 (2d Cir. 1987); Gardner, 895 F.2d at 79-80. Prior cases have recognized the need to protect third-parties from the disclosure of information which is "scandalous, unfounded, or speculative." Amodeo II, 71 F.3d at 1052 (sealing portions of a document containing accusations which were unsworn and "of doubtful veracity, possibly stemming in part from personality conflicts.").

Here, the information concerning the two individuals was reported by two FBI agents and made under oath. By their sources and form, therefore, the affidavits bear reasonable indicia of reliability and trustworthiness. Moreover, the information related in the affidavits about the two individuals is not salacious, sensational, or descriptive of private, embarrassing conduct unrelated to the business matters under investigation. The information contained in the affidavits about the two individuals is limited to the details of business transactions in which the two were involved with Dare. Additionally, while the United States asserts that neither individual has been or will be charged with any federal offense, both affidavits assert that there was probable cause to believe that Dare and the two individuals "misappropriated rental proceeds and other income for their own use."

While uncharged, therefore, it remains open to question whether their conduct was "innocent."  See Gardner, 895 F.2d at 79 (citation omitted).

Finally, the premise of the federal investigation of Dare and those associated with him was that mortgages obtained to finance certain real estate purchases were insured by the United States Department of Housing and Urban Development (HUD), which regulated the use of income received from the property.  The individuals involved in the operation of such properties should reasonably have anticipated that their use of the income from the properties would be examined by HUD.  Therefore, both because public funds were at stake and because these individuals should have anticipated government scrutiny, their expectations of privacy in the transactions described in the affidavits was substantially reduced.  See Amodeo II, 71 F.3d at 1052-53 (finding that the activities of a law firm which were described in a sealed report were "such that the firm might reasonably have expected some public scrutiny.").

Thus, what appears here is a strong presumption of public access to the affidavits weighed against the acknowledged but diminished privacy interests of two third-parties.  Given the strength of the presumption here and the third-parties' limited expectation of privacy, the balance tips decidedly in favor of unsealing and access.  Redaction of the names of the two individuals remains possible and has been suggested as an alternative by the United States.  However, redaction of all information in the affidavits which could serve to identify the individuals would excise from public examination significant material portions of the affidavits.  Such redaction would too greatly impair the ability of the public to monitor the judicial process here which stands at the heart of the presumption of access.  Accordingly, the secondary protection of redaction is also rejected.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

1. The two above-captioned matters are consolidated for purposes of Lyons' motion;

2. Lyons is granted leave to intervene in these matters to move to unseal the documents contained in their dockets;

3. The documents contained in the two above-captioned matters are **UNSEALED** except that the Clerk shall maintain the original affidavits of Hautau and Bragg **UNDER SEAL** pending further order of the Court;[4]

4. On or before **December 13, 2006**, the United States shall submit to the Court copies of the affidavits of Hautau and Bragg containing the redactions which the United States contends are necessary to prevent identification of the confidential sources of information in the affidavits; and

5. Upon review and determination of the proposed redactions, the redacted affidavits will be ordered filed and made available to the public.

**IT IS SO ORDERED.**

*David R. Horner*
United States Magistrate Judge

DATED:  December 11, 2006
        Albany, New York

---

[4] The original affidavits are both attached as part of single docket filings to the search warrants. The Clerk shall, therefore, unseal the search warrants, sever the affidavits from the search warrants, and file the affidavits as separate, sealed docket entries.